**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

In re:

MONICA RHEA THORN,

Debtor.

Chapter 13

Case No. 24-11523 (JPM)

***APPEARANCES***

**JOSEPH A. ALTMAN P.C.**
*Counsel for the Debtor*
654 North Terrace Avenue
Fleetwood, NY 10552
By: Joseph A. Altman

**SCHNEIDER BUCHEL LLP**
*Counsel for 112-114 East 98th Street H.D.F.C.*
60 Crossway Parks Drive West, Suite 340
Woodbury, New York 11797
By: Ivana Garbowski

**CHAPTER 13 TRUSTEE**
*Standing Chapter 13 Trustee*
399 Knollwood Rd., Ste. 102
White Plains, NY 10603
By: Thomas C. Frost

**UNITED STATES TRUSTEE**
*Office of the U.S. Trustee, Region 2*
Alexander Hamilton Custom House
One Bowling Green, Rm. 534
New York, NY 10004

**MEMORANDUM OPINION AND ORDER (1) FINDING THAT H.D.F.C. HAS A SECURED CLAIM (2) DEFERRING RULING ON MOTION FOR RELIEF FROM THE STAY**

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I. INTRODUCTION

Before the Court is 112-114 East 98th Street H.D.F.C.'s ("**H.D.F.C.**") *Motion for Relief From Stay* (the "**Motion**"). (Dkt. No.60). H.D.F.C. seeks relief from the automatic stay under 11 U.S.C. § 362(d) based on the debtor Monica Rhea Thorn's (the "**Debtor**") alleged failure to remit post-petition payments, including interest and legal fees. In response, the Debtor asserts that she paid any outstanding post-petition arrearage and disputes H.D.F.C.'s entitlement to any additional amounts, including interest and legal fees. (Dkt. Nos. 64 and 72). The Court held a hearing on the Motion on October 29, 2026 (the "**Hearing**").

Having reviewed the parties' filings, the arguments presented at the Hearing, and the record, the Court finds that H.D.F.C. has a secured claim against the Debtor's estate and is entitled to the post-petition payments requested in the Motion. Further, the Court does not rule on stay relief at this time and directs H.D.F.C. to supplement the Motion with an accounting of the alleged post-petition amounts that remain outstanding. The Court will then hold an evidentiary hearing, if necessary, to determine the validity and amount of the payments the Debtor must remit to H.D.F.C.

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a), 157(a), and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## III. BACKGROUND

### A. The Lease

H.D.F.C. is a cooperative corporation that owns an apartment complex located at 112 East 98th Street, New York, NY 10029 (the "**Building**"). (Dkt. No. 60, ¶ 2). The Debtor is a resident and shareholder of H.D.F.C., owning 250 shares allocated to Apartment 1R of the Building (the "**Property**"). (*id.* ¶ 3). The Debtor holds a proprietary lease dated October 30, 2002. (the "**Lease**").

Under the Lease, the Debtor is obligated to pay monthly maintenance and related charges. (*Id.* ¶ 5; *see also* Dkt. No. 60, Ex. C., Lease §§ 1.01, 5.02). Failure to make such payments constitutes a default. (*Id.*). Paragraph 6.01(c) of the Lease further provides that, upon default, H.D.F.C. may recover expenses incurred in enforcing its rights—including "reasonable attorney's fees"—as additional maintenance charges. (*Id.* Ex. C., Lease § 6.01(c)). That paragraph states:

> The Corporation shall be entitled to recover from the Shareholder all expenses incurred under paragraphs 6.01(a) or 6.01(b). If the Shareholder shall at any time be in default under this lease and the Corporation shall incur any expense (whether paid or not) in performing acts which the Shareholder is required to perform, or in beginning any lawsuit or proceeding based on such default, or defending, or asserting a counterclaim in any action or proceeding brought by the Shareholder, said expense including reasonable attorney's fees and disbursements, shall be paid by the Shareholder to the Corporation, on demand, as additional maintenance charges.

Paragraph 5.02(a) of the Lease permits H.D.F.C. to charge interest on past due maintenance charges. (*Id.* Ex. C., Lease § 5.01(a)). That paragraph states:

> If the Shareholder shall fail to pay any installment of maintenance charge promptly, the Shareholder shall pay interest thereon at the maximum legal rate from the date when such installment shall have become due to the date of the payment thereof, and such interest shall be deemed an additional maintenance charge hereunder.

The Debtor ceased making monthly payments in May 2021. (Dkt. No. 60, ¶ 6). On September 3, 2024, the Debtor filed a voluntary petition for Chapter 13 bankruptcy. (Dkt. No. 1).

## B. The Debtor's Objection to H.D.F.C.'s Claim And The March 9, 2026 Opinion

On November 12, 2024, H.D.F.C. filed a proof of claim asserting a secured claim of $22,899.01 for maintenance arrears, interest, and legal fees. (*See* Proof of Claim, Dkt. No. 52, Ex. C.). H.D.F.C. contended that its claim is secured by the Debtor's shares in the Property and her proprietary lease, and that H.D.F.C.'s security interest is evidenced by the stock certificate issued to the Debtor in connection with her ownership of 250 shares allocated to the Property. (*Id.*). On October 6, 2025, the Debtor filed an objection to H.D.F.C.'s claim based on H.D.F.C.'s inclusion of interest and legal fees. (Dkt. No. 41). On February 19, 2026, H.D.F.C. responded to the Debtor's objection and reduced its claim to $19,292.97. (Dkt. No. 52 ¶ 16). The Debtor then filed a second objection to H.D.F.C.'s amended claim, again contesting the inclusion of interest and legal fees. (Dkt. No. 54).

On March 9, 2026, this Court issued an Opinion overruling the Debtor's objections to H.D.F.C.'s asserted claim (the "**March 9 Opinion**"). *See In re Thorn*, 679 B.R. 127 (Bankr. S.D.N.Y. 2026). The Court found that the inclusion of interest and legal fees in H.D.F.C.'s pre-petition claim was appropriate under New York law and the terms of the Lease. *See id.* at 132-33. The Court also did not determine the secured status of H.D.F.C.'s claim and directed H.D.F.C. to "supplement its proof of claim to include any documentation sufficient to establish the validity and perfection of its asserted security interest." *Id.* at 136.

On March 20, 2026, H.D.F.C. filed a supplement to its amended proof of claim, attaching its stock certificate and by-laws. (Dkt. No. 59). The back of H.D.F.C.'s stock certificate states that "[t]his Corporation, by the terms of the By-laws and Proprietary Lease, has a lien on the shares represented by this Certificate for all sums due and to become due under the Proprietary Lease . . . ." (Dkt. No. 59, Ex. 3). Section 6 within Article V of H.D.F.C.'s by-laws provides:

> [t]he Corporation shall at all times have a first lien on the Shares owned by each shareholder for all sums due and to be due the Corporation from the shareholder including, without limitation, obligations arising under the provisions of any Proprietary Lease issued by the Corporation and held at any time by the shareholder.

(Dkt. No. 59, Ex. 2).

Further, Section 2.01 of the Lease states that "the Shares to which this lease pertains are subject to a lien by the Corporation, which is set forth in greater detail in Article V of the By-Laws . . . and in a legend on the [stock] certificate." (Dkt. No. 60, Ex. C., Lease § 2.01).

### C. THE MOTION AND THE DEBTOR'S RESPONSES

On March 20, 2026, H.D.F.C. filed the Motion. (Dkt. No. 60). H.D.F.C. claims that the Debtor failed to remit any post-petition payments toward monthly maintenance charges, including interest on post-petition maintenance charge arrears and legal fees. (*Id.* ¶¶ 6-7). H.D.F.C. calculated the sum of the post-petition arrears to be $21,900.01. (*Id.* ¶ 8). However, H.D.F.C. added that this sum did "not include interest and late charges or other legal fees that have not yet been posted to Debtor's account." (*Id.*).

On April 17, 2026, the Debtor filed an *Affirmation in Opposition to the Notice of the Motion* in which the Debtor argued that the Motion was "moot" because she was now "current on [her] Post-Petition payments, see Exhibit 'A[.]'" (Dkt. No. 64). As "Exhibit A," the Debtor attached a photograph of a cashier's check made out to H.D.F.C. in the amount of $22,889.05 dated April 14, 2026 (the "**April Check**"). (*Id.*, Ex. A).

On April 20, 2026, H.D.F.C. filed a reply to the Debtor's affirmation acknowledging the April Check issued by the Debtor to repay her post-petition arrears. (Dkt. No. 65). However, H.D.F.C. argued that the April Check failed to satisfy the full balance of the post-petition arrears because it did not include post-petition interest and legal fees. (*Id.*, ¶ 3). Yet, H.D.F.C. again did

not quantify the remaining balance of unpaid interest and legal fees because the "interest and late charges or other legal fees" had "not yet been posted to the Debtor's account." (*Id.*).

On August 19, 2026, the Debtor filed a response to H.D.F.C.'s supplement to its proof of claim. (Dkt. No. 72). The Debtor again asserted that the April Check was "for the arrears [H.D.F.C.] claimed were due," but also claimed the $22,889.05 remitted to H.D.F.C. through the April Check was intended to satisfy H.D.F.C.'s $19,292.97 pre-petition claim, resulting in an "overpayment of $3,596.00." (*Id.* ¶¶ 3-4). The Debtor further argued that H.D.F.C. failed to "establish the validity and perfection of its asserted security interest in the Debtor's stock and lease." (*Id.* ¶ 8).

On August 25, 2026, the Debtor filed a new objection to H.D.F.C.'s pre-petition claim. (Dkt. No. 73). The Debtor again appeared to argue that the April Check was intended to pay off H.D.F.C.'s pre-petition claim instead of the post-petition arrears. The Debtor asserted that H.D.F.C.'s claim "should be reduced to the sum of zero ($0.00), and it was paid and overpaid by the payment of $22,889.00 [(the April Check)], overpayment of $3,596. (*Id.*). In a status letter dated September 23, 2026, the Debtor once again referred to the April Check as an "overpayment" in satisfaction of H.D.F.C.'s pre-petition claim for which the Debtor "anticipate[d] the Creditor refunding the sum of $3,596." (Dkt. No. 85).

## IV. LEGAL STANDARD

Under 11 U.S.C. § 362(d), a party in interest may, "after notice and a hearing," seek "relief from the automatic stay by terminating, annulling, modifying, or conditioning" the stay. *In re Schuessler*, 386 B.R. 458, 479 (Bankr. S.D.N.Y. 2008) (citing 11 U.S.C. § 362(d)). Under Section 362(d)(1), relief from the automatic stay may be granted "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1).

"A debtor's failure to make required post petition payments—whether mortgage payments or rent—can constitute 'cause' to lift the stay and is 'one of the best examples of a "lack of adequate protection" under Section 362(d)(1).'" *In re Moche*, 677 B.R. 592, 612 (Bankr. S.D.N.Y. 2026) (quoting *Schuessler*, 386 B.R. at 481); *see also In re Taylor*, 151 B.R. 646, 648 (E.D.N.Y. 1993) ("[A] debtor's failure to mortgage make regular payments as they become due constitutes sufficient 'cause' to lift the automatic stay."); *In re Tihi Rest. Corp.*, No. 22-11216 (JPM), 2023 WL 1768373, at *2 (Bankr. S.D.N.Y. 2023) (recognizing that "the right to timely payment of rents constitutes an interest in property entitled to adequate protection," and the court may lift the stay for the failure to pay post-petition rent).

The movant needs to only "make a *prima facie* showing that it is entitled to relief from stay." *Schuessler*, 386 B.R. at 479. "Without quantifying the decline in value," the movant "can often establish its *prima facie* case by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments." *In re Elmira Litho, Inc.*, 174 B.R. 892, 903 (Bankr. S.D.N.Y. 1994). Once the movant establishes a *prima facie* case, the burden shifts to the debtor—or the party opposing relief—to show that cause does not exist to lift the stay. *See Schuessler*, 386 B.R. at 480; *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) ("While section 362(g) allocates the burden of ultimate persuasion, under either ground, the movant must still make a prima facie showing that it is entitled to the relief that it seeks.").

## V. ANALYSIS

### A. H.D.F.C.'s Claim Is Secured

As a threshold matter, the Court has not yet determined whether H.D.F.C.'s claim is secured or unsecured. *See Thorn*, 679 B.R. at 135. In the March 9 Opinion, the Court found that H.D.F.C. had not provided sufficient documentation to "establish the validity and perfection of its

asserted security interest" under Federal Rule of Bankruptcy Rule 3001 and directed H.D.F.C. to supplement its proof of claim with such documentation. *Id.* Based on H.D.F.C.'s supplement to its proof of claim, the Court now finds that H.D.F.C.'s claim is secured.

Under New York law, cooperative corporations may obtain a security interest in a shareholder's shares and proprietary lease. *See id.* at 134. Article 9 of the Uniform Commercial Code (the "**UCC**") governs security interests in cooperative interests, which are defined as "an ownership interest in a cooperative organization, which interest, when created, is coupled with possessory rights of a proprietary nature in identified physical space belonging to the cooperative organization." N.Y. U.C.C. § 9-102(a)(27-d), 9-109(a)(7). A cooperative corporation may create a security interest in a cooperative interest through a "cooperative record" that (1) "provides that the owner of a cooperative interest has an obligation to pay amounts to the cooperative organization incident to ownership of that cooperative interest" and (2) "states that the cooperative organization has a direct remedy against that cooperative interest if such amounts are not paid." N.Y. U.C.C. § 9-102(a)(74).

The cooperative corporation's bylaws and the proprietary lease terms may serve as the cooperative record that creates a security interest in a shareholder's interest. *See Stavinsky v. Prof-2013-S3 Legal Title Tr. by U.S. Bank Nat'l Ass'n*, *Fay Servicing*, 77 N.Y.S.3d 287, 293 (N.Y. Sup. Ct. 2018); *see also In re McCoy,* 496 B.R. 678, 685 (Bankr. E.D.N.Y. 2011) ("[T]he By–Laws and Lease constitute a 'cooperative record' that grants Gothic a perfected cooperative organization security interest in the Apartment.").

Lastly, a cooperative corporation's security interest is automatically perfected "when the cooperative interest first comes into existence and remains perfected so long as the cooperative interest exists." N.Y. U.C.C. § 9-308(h). Accordingly, "the filing of a financing statement is not

necessary to perfect a security interest . . . that is a cooperative organization security interest." N.Y. U.C.C. § 9-310(b)(11).

Here, H.D.F.C.'s supplement to its proof of claim establishes its perfected security interest in the Debtor's shares and the Lease. The stock certificate, by-laws, and the terms of the lease collectively constitute the "cooperative record" required to create a security interest in the Debtor's interest in the Property. *See McCoy,* 496 B.R. at 685 ("By creating a first lien on the shares in order to secure the lease payments from the shareholder, the By–Laws establish [a] 'direct remedy' against the Debtor's 'cooperative interest' if the Lease obligations are not paid."). The Lease provides that the Debtor must pay certain maintenance and other charges incidental to ownership of the shares. The stock certificate and by-laws place a lien "for all sums due" under the terms of the Lease, providing a "direct remedy" in the event the Debtor fails to fulfill her Lease obligations. (Dkt. No. 59, Ex. 2 and Ex. 3). Moreover, H.D.F.C.'s security interest was perfected upon its creation under Section 9-308(h) of the UCC. N.Y. U.C.C. § 9-308(h). In sum, H.D.F.C. has provided sufficient documentation of its perfected security interest to satisfy Rule 3001 and the Court now finds that H.D.F.C. holds a secured claim against the Debtor's estate.

### B. Stay Relief Cannot Be Granted Unless H.D.F.C. Specifies The Post-Petition Amounts That Are Due

H.D.F.C. claims that it is entitled to relief from the stay due to the Debtor's failure to remit post-petition payments. Following the filing of the Motion, the Debtor attempted to cure her post-petition arrears through the April Check, which covered the outstanding balance of post-petition maintenance charges at the time. On the present record, it is unclear whether the Debtor is current on maintenance charges. Accordingly, the Court cannot determine whether there is a basis to grant stay relief for failure to make post-petition payments.

Moreover, H.D.F.C. also seeks relief from the stay based on the Debtor's failure to pay interest and legal fees associated with the post-petition maintenance charge arrears. However, H.D.F.C. has yet to quantify these unpaid amounts and, in its filings, opaquely refers to "interest and late charges or other legal fees that have not yet been posted to Debtor's account." (Dkt. No. 60, ¶ 8). When seeking relief from the stay, the movant is required to "make a *prima facie* showing that it is entitled to the relief that it seeks." *Eatman*, 182 B.R. at 390. The burden only shifts to the debtor "once the creditor alleges facts demonstrating a legal entitlement to the relief sought." *Schuessler*, 386 B.R. at 479-80. By failing to specify the post-petition amounts it claims the Debtor owes, H.D.F.C. has not pleaded sufficient facts to establish whether cause exists to grant relief from the stay.

On the present record, the Court cannot determine whether H.D.F.C. is entitled to relief from the automatic stay. Accordingly, H.D.F.C. is directed to supplement the Motion within five (5) days of this Order to include the precise post-petition amounts it alleges the Debtor has failed to remit. The Debtor shall have five (5) days thereafter to respond to the amounts claimed by H.D.F.C.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that:

1. H.D.F.C. has a secured claim against the Debtor's estate.
2. H.D.F.C. is entitled to post-petition payments.
3. H.D.F.C. shall file a supplement to the Motion with the precise post-petition amounts alleged due within five (5) days of this Order. The Debtor shall have five (5) days to respond to the amounts claimed by H.D.F.C.

4. The Court will then determine whether an evidentiary hearing is needed to establish the amounts that the Debtor must remit to H.D.F.C.

**IT IS SO ORDERED.**

Dated: November 5, 2026
New York, New York

/s/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE